HATTIE V. KESSLER, Respondent, v. THE ANSONIA, a Domestic Corporation, Appellant.[*]

First Department, December 23, 1927.

Landlord and tenant — liability of landlord for damage caused by steam leakage — plaintiff leased apartment in building under lease providing that defendant would not be liable for leakage — under lease defendant liable only for acts of affirmative negligence or failure to remedy actual defects called to its attention — evidence does not establish liability.

Plaintiff leased an apartment in defendant's apartment hotel under a lease which provided that the defendant would not be liable for any damage to plaintiff's property by the leakage of water or steam. This action is brought to recover damage alleged to have been caused by steam leaking from broken radiators. The defendant, under the terms of the lease, is liable only for acts of affirmative negligence or for failure to remedy actual defects when those defects were called to its attention.

The evidence does not establish any affirmative negligence on the part of the defendant or that it failed to remedy defects in the radiators that were called

* Revg. 129 Misc. 342.

to its attention. While the plaintiff's evidence tended to show that she had made several complaints to the defendant, that the defendant sent its servants to make repairs and that she was advised by the defendant to shut off the radiators, this evidence did not establish a *prima jacie* case showing, as alleged in the complaint, that there was excessive pressure of water or steam. And in reference to the failure to repair, the plaintiff offered no evidence of the nature of the defects or of any defects prior to the time complained of, and she offered no proof of the nature of the alleged repairs or any facts from which the jury might infer that the repairs, if made, were negligently made.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 26th day of April, 1927.

*Frank I. Tierney* of counsel [*Wendell P. Barker* with him on the brief; *Bonynge & Barker*, attorneys], for the appellant.

*Emanuel Sustick* of counsel [*Fliashnick & Sustick*, attorneys], for the respondent.

O'MALLEY, J. The action seeks to recover damages for injury to personal property. The damage was caused by steam from a radiator or radiators in one of the rooms of an apartment occupied by the plaintiff in defendant's hotel. Her occupancy was under a written lease which contained the following clause: " *Fifth.* That the lessor shall not be liable for any damage to any property, at any time, in said premises or building, by leakage of Croton or other water, steam or gas, from or into any part of said building in which the demised premises are situated, or from any other cause, in any event."

Under the authorities a clause of this character exempts the landlord from liability except for acts of affirmative negligence or for failure to remedy actual defects when called to his attention. It relieves him from the ordinary duty imposed to inspect and exercise reasonable care to discover defects or to prevent them. The rule was thus expressed by Mr. Justice, now Judge, LEHMAN, in writing for the Appellate Term, in *Drescher Rothberg Co.* v. *Landeker* (140 N. Y. Supp. 1025), where he said: " It seems to me that this clause, interpreted ' to get at the real intent of the parties,' means simply that the landlord is not to be liable for damages caused by wear and tear, or inherent defects, or the action of the elements, although by the exercise of active vigilance he might have prevented such damages; but it does not exempt him from his liability to repair actual defects, when called to his attention, or from acts of affirmative negligence. I find no case in which such a clause has received an interpretation wide enough to exempt the landlord from liability for such acts, nor would such an interpretation be consonant with common sense. The tenant

cannot repair the parts of the building in the landlord's control, and it was obviously the intent of the parties that the landlord should continue to make these repairs. If he is negligent in making them when called to his attention, the lease should not be interpreted as exempting him from liability. On the other hand, the clause is certainly intended to provide some protection to the landlord, and the protection intended was to my mind an exemption from liability for failure to protect his tenants from damages which he might have, but did not, foresee; in other words, he is exempted from damages caused by his failure to maintain an active vigilance in the examination of the premises."

To the same effect are the cases of *Lewis Co.* v. *Metropolitan Realty Co.* (112 App. Div. 385; affd., 189 N. Y. 534) and *Pratt, Hurst & Co., Limited,* v. *Tailer* (114 App. Div. 574; affd., 186 N. Y. 417).

The question presented is whether the plaintiff has presented evidence sufficient to justify a finding that the defendant was guilty of either affirmative negligence or failure to remedy defects when called to its attention. Her evidence shows that she had been a tenant in the hotel of the defendant prior to January 8, 1924, when she took a new lease of two large rooms, a bedroom and two foyers. One of the large rooms was apparently a part of the five-room apartment she had previously occupied and into this she moved a great quantity of furniture and household articles. Otherwise she did not use the room except to enter it occasionally for the purpose of securing articles of wearing apparel. This room had three radiators. The plaintiff testified that prior to January twenty-fourth, the date when the damage occurred, steam escaped from one of the radiators, not in any great quantity, but to such an extent as to cause annoyance; that she made frequent complaints and upon three different occasions employees of the hotel came to her room as a result thereof; that she did not know what work they did, but observed them hammering around the radiator; that on one occasion two boys came whose conduct evinced irritation because of trouble they were having all over the house with steam pipes; that after this she had further trouble on account of more steam escaping; that it escaped from near the place "where you turn it off" and from near an elbow where it was subsequently found to be broken. However, this slight increase caused no damage.

On the day before the damage, plaintiff testified to having made one of such complaints. She testified that she called down to have it repaired and that she was told that someone would be sent up to fix it and that in the meantime she should turn it off. This she

did. While she later testified generally that the radiators were never completely turned off but were left on part way so as to afford comfortable heat to the room, the fair inference is that the radiator was not turned on again that day or until the damage occurred.

On the following morning the plaintiff discovered so great a quantity of steam that she thought there was a fire. She gave notice to the defendant and the investigation which followed disclosed that two elbows, one described as a ninety-degree elbow, and one a forty-five-degree elbow, had apparently blown out on the radiator about which she had made complaints. Another forty-five-degree elbow had blown out on one of the other radiators. Concededly a vast amount of steam escaped on this occasion, causing considerable damage to the property in the room.

The defendant gave evidence tending to show that no complaint by plaintiff was ever made. Its engineer, who claimed that all repairs were made under his supervision, testified that he never had any complaint and had not sent any one to make repairs. Of course, all employees of the defendant were not called and the learned trial justice had a right to accept the plaintiff's testimony that some of the defendant's employees came on three different occasions. Defendant's evidence tended further to show that after the accident the valves of all three radiators were found closed and that the blowing out of the elbows on the two radiators was due to expansion caused by water which froze in the radiator and which collected after condensation of steam which followed the turning off of the radiators. Its evidence also tended to show that between January eighth and January twenty-fourth the weather was sufficiently cold to permit freezing of water in the radiators if the steam had been entirely shut off. Additional evidence was given tending to show that the radiators were constructed to withstand a steam pressure of one hundred and twenty-five pounds and that at no time between the dates in question was there a maximum of more than five pounds pressure.

But whether the defendant offered sufficient explanation of the accident is not the important question. We are concerned chiefly with the question whether the plaintiff presented a *prima facie* case. Clearly she did not. Her complaint alleged as ground of negligence, among others, the circulation of an excessive quantity or pressure of water or steam through the radiators or pipes leading thereto. She offered no proof whatever of excessive pressure, and as already appears the defendant's evidence tended to negative any such fact. The remaining allegations of negligence were to the effect that the defendant neglected to properly examine and

inspect the radiators, pipes and other appliances and failed and neglected to properly ascertain if they were in fit and proper condition. If we assume that these allegations are sufficient to charge negligence for failure to properly repair, plaintiff's proof was insufficient to sustain them.

There was no evidence of the nature of the defects or of any defects prior to January twenty-fourth. All that appears is that steam escaped in small quantities without causing damage. In addition there was no proof of the nature of the repairs made, and of course none as to whether they were negligently made; nor was there any evidence from which the jury might infer negligence in such repairs. In short, there was no proof to show connection between the alleged prior defects and the failure to repair, and the condition of the radiators after the accident, both with respect to the amount of the steam escaping or the then condition of the radiators.

It follows that the judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

DOWLING, P. J., MERRELL, MARTIN and PROSKAUER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.